**Serenus G. MANDERS, David W. Manders and Dennis P. Manders, Plaintiffs,**

v.

**Sandee K. MANDERS and Joseph McDermott, III, Defendants.**

Civ.A. No. H–94–4247.

United States District Court,
S.D. Texas,
Houston Division.

Sept. 18, 1995.

Daniel Kyle Williams, Houston, TX, for plaintiffs.

Joseph Albert McDermott, III, Houston, TX, pro se.

Charles Meredith Kinsey, Pearland, TX, for defendant Sandee Manders.

## MEMORANDUM AND ORDER

CRONE, United States Magistrate Judge.

### I. *Introduction.*

Pending before the court is Defendant Joseph A. McDermott, III's ("McDermott") Motion for Summary Judgment (# 14). McDermott seeks summary judgment on Plaintiffs Serenus G. Manders, David W. Manders, and Dennis P. Manders' (collectively "the Manders") claims of slander of title and interference with business relations.

Having reviewed the pending motion, the submissions of the parties, the pleadings, and the applicable law, this court is of the opinion that McDermott's motion for summary judgment should be granted.

### II. *Background.*

This case arises out of the allegedly wrongful filing of notices of lis pendens by Defendants Sandee Kay Manders ("Sandee") and McDermott on properties owned by Serenus G. Manders ("Serenus"), David W. Manders ("David"), and Dennis P. Manders ("Dennis").

Sandee was previously married to Douglas G. Manders ("Doug"). Serenus is Doug's father, and David and Dennis are Doug's brothers. After eight years of marriage, Doug filed for divorce from Sandee in August 1990. The divorce was finalized on March 25, 1991.

On February 21, 1992, Sandee filed a lawsuit in the 127th Judicial District Court of Harris County, Texas, against Doug, Serenus, David, and Dennis. McDermott was Sandee's attorney in that lawsuit. Sandee

alleged in her original petition that Doug was in breach of their divorce decree for failing to pay certain debts. Sandee also claimed that Doug had fraudulently transferred a variety of assets to the other defendants, without consideration, in an effort to evade his obligations under the divorce decree in violation of the Fraudulent Transfer Act. Sandee further alleged that all the defendants had acted with a common wrongful purpose—to deprive her of her rights under the divorce decree— and sued each defendant for civil conspiracy. Finally, Sandee claimed that the conduct of Serenus, David, and Dennis constituted tortious interference with the contract between Sandee and Doug incorporated in their divorce decree. In connection with that action, on April 13, 1992, Sandee, acting through her attorney McDermott, recorded lis pendens notices on seven of the Manders' properties. At the time Sandee filed the notices of lis pendens, none of the properties was owned by Doug. The only property of the seven that had ever been owned by Doug, eighty-one acres of Iowa farm land, was awarded to Doug in their divorce decree. After their divorce, Doug conveyed the property to Serenus by quit claim deed allegedly for consideration and in satisfaction of a debt owed to his father.

In August 1992, Aprill Claire Ralowicz ("Ralowicz") entered into a contract with Dennis for the purchase of Lot 50 of the Wellman Subdivision in Brazoria County, Texas. Before closing, the title company discovered that the title to the subject property was clouded by a lis pendens filed by Sandee. According to Ralowicz's affidavit, she contacted Sandee on two occasions and offered to pay her $1,000 to obtain the release of the lis pendens, but Sandee refused, and the closing never took place. Ralowicz informed Serenus about the lis pendens filed against Dennis' property. After going to the courthouse, Serenus discovered that a notice of lis pendens had been filed by Sandee, through her attorney McDermott, on Lot 50 of the Wellman Subdivision, as well as several other properties owned by members of the Manders family. Subsequently, according to Serenus, he contacted both Sandee and McDermott to resolve the lawsuit amicably, but his offers were rebuffed.

On April 22, 1993, without having conducted any discovery, McDermott filed a motion for non-suit, allegedly on Sandee's instructions, and the state district judge dismissed the case on April 30, 1993. McDermott, however, failed to file releases of the notices of lis pendens. The Manders allege in their amended response to McDermott's judgment on the pleadings that "[e]ventually every encumbered property was lost to foreclosure and sale...." After their Texas real estate ventures failed, the Manders moved back to Iowa.

On April 15, 1994, the Manders filed this lawsuit in the Northern District of Iowa, alleging slander of title and interference with business relations. The Manders, acting *pro se,* contend in ¶ 8 of their complaint that "the Defendants did intentionally and maliciously slander the titles of real estate owned by the Plaintiffs by filing seven (7) lis pendens on said property." The Manders also contend in ¶ 11 that "the lis pendens were falsely filed because Sandee Kay Manders had NO claim against the Plaintiff." Additionally, ¶ 12 of the complaint alleges that "Joseph McDermott III acted as agent for Sandee Kay Manders and knew, or should of (sic) known that there were no grounds or probable cause for lis pendens to be filed against the Plaintiff (sic)." In ¶ 16, the Manders contend that they were involved in the business of buying, renting, and selling real estate. The Manders claim in ¶ 17 that the "defendants intentionally and unjustifiably interfered with plaintiff's business by causing the plaintiffs to become unable to operate their business." The Manders seek $425,000 in special damages "as a result of the malicious slander of title" and $875,000 on their interference with business relations claim.

On September 1, 1994, Sandee filed a motion to transfer venue to the Southern District of Texas, pointing out that the cause of action accrued in Texas and both defendants are Texas residents. The Iowa district court granted the motion on November 25, 1994, and the case was transferred to the Southern District of Texas, Houston Division.

Subsequently, on April 3, 1995, Defendant McDermott filed a motion for judgment on

the pleadings. McDermott alleges that because Manders' complaint is based only on the notices of lis pendens filed by McDermott as Sandee's attorney, he is entitled to judgment, as the filing of a lis pendens is absolutely privileged. Alternatively, McDermott contends that his actions as Sandee's attorney in the state court litigation are absolutely privileged as a matter of law. Finally, McDermott claims that because there was no privity of contract between McDermott and the Manders, he owed them no duty, and thus cannot be liable to them for any alleged misconduct. The Manders, again acting *pro se,* filed a "resistance" to McDermott's motion for judgment on the pleadings. Thereafter, the Manders retained counsel on April 26, 1995, and amended their response to McDermott's motion. On July 21, 1995, this court converted McDermott's motion for judgment on the pleadings to a motion for summary judgment pursuant to Fed.R.Civ.P. 12(c), to which the Manders timely filed a response.

III. *Analysis.*

A. *The Applicable Standard.*

Rule 56(c) provides that "[summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Williams v. Adams,* 836 F.2d 958, 960 (5th Cir.1988). Once a proper motion has been made, the non-moving party may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing the existence of a genuine issue for trial. *Celo-*

*tex Corp.,* 477 U.S. at 322–23, 106 S.Ct. at 2552; *Anderson,* 477 U.S. at 257, 106 S.Ct. at 2514; *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992). Summary judgment is mandated if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to his case on which he bears the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

B. *Lis Pendens.*

In Texas, "the lis pendens doctrine provides that one acquiring an interest in property the subject of a lawsuit takes the interest subject to the parties' rights as finally determined by the court." *Hamman v. Southwestern Gas Pipeline, Inc.,* 821 F.2d 299, 304 (5th Cir.), *vacated in part on other grounds on reh'g,* 832 F.2d 55 (5th Cir.1987). It is simply a notice of pending litigation. *Beefy King Int'l, Inc. v. Veigle,* 464 F.2d 1102, 1104 (5th Cir.1972). A party involved in the suit must file a written notice with the county clerk in the county in which the property is located, informing those interested about the litigation and identifying the property subject to the dispute. *Hamman,* 821 F.2d at 304 (citing Tex.Prop.Code §§ 12.007, 13.004 (Vernon 1984)). "Under Texas law, a lis pendens purchaser 'proceeds at its own risk'—'any interest it acquires is subject to the outcome of the pending litigation.'" *Resolution Trust Corp. v. Kemp,* 951 F.2d 657, 663 (5th Cir.1992). The United States Court of Appeals for the Fifth Circuit noted in *Beefy King Int'l, Inc.,* "[t]he effect of a lis pendens on the owner of property, however, is constraining." 464 F.2d at 1104. "For all practical purposes, it would be virtually impossible to sell or mortgage the property because the interest of a purchaser or mortgagee would be subject to the eventual outcome of the lawsuit." *Id.*

The filing of a notice of lis pendens is viewed by the Texas courts as constituting part of a judicial proceeding. *Kropp v. Prather,* 526 S.W.2d 283, 287 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.); *see Bayou Terrace Inv. Corp. v. Lyles,* 881 S.W.2d 810, 818 (Tex.App.—Houston [1st Dist.] 1994, no

writ). "Any communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot form the basis for a cause of action in libel or slander." *Kropp,* 526 S.W.2d at 286; *see Reagan v. Guardian Life Ins. Co.,* 140 Tex. 105, 166 S.W.2d 909, 912 (1942); *Runge v. Franklin,* 72 Tex. 585, 10 S.W. 721, 723 (1889); *Hauglum v. Durst,* 769 S.W.2d 646, 653 (Tex.App.—Corpus Christi 1989, no writ). When the notice is filed "under the authority of a statute," it is "as much entitled to the benefit of privilege ... as are the pleadings in the action to which the notice relates." *Kropp,* 526 S.W.2d at 287.

### 1. *Slander of Title.*

■ In Texas, to prevail on a slander of title claim, the plaintiff must allege and prove: "(1) the utterings and publishing of disparaging words; (2) that they were false; (3) that they were malicious; (4) that special damages were sustained thereby; and (5) that the plaintiff possessed an estate or interest in the property disparaged." *Hauglum,* 769 S.W.2d at 653; *Louis v. Blalock,* 543 S.W.2d 715, 717 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.).

■ In *Kropp,* slander of title served as the basis for a cross-action resulting from the "alleged inability to close outstanding contracts of sale ... because of the lis pendens filed...." 526 S.W.2d at 286. The appellate court in *Kropp* held:

> Because the recording of a lis pendens is specifically authorized by statute and has no existence separate and apart from the litigation of which it gives notice, we hold that the filing of a notice of lis pendens in this action is a part of the 'judicial proceeding.'

*Id.* at 287. The court concluded that a privilege attaches to the filing of a lis pendens notice and affirmed the summary judgment granted by the trial court. *Id.* at 288.

Here, the Manders make essentially the same claim—that because McDermott, acting on behalf of Sandee Manders, filed a lis pendens notice, the Manders were damaged by not being able to close on outstanding contracts or otherwise continue in the real estate business. McDermott argues that there is a blanket privilege associated with lis pendens. As the basis for his contention, McDermott relies on the decision of two Texas appellate court cases—*Griffin* and *Prappas. See Prappas v. Meyerland Community Improvement Ass'n,* 795 S.W.2d 794 (Tex. App.—Houston [14th Dist.] 1990, writ denied); *Griffin v. Rowden,* 702 S.W.2d 692 (Tex.App.—Dallas 1985, writ ref'd n.r.e.).

The claims in *Griffin* involved slander of title and interference with advantageous business relationships, much like the claims in the present case. *See id.* at 693. The court concluded "that a holding in the present case that lis pendens was absolutely privileged would be in keeping with our supreme court's observations that good faith litigants should be assured access to the judicial system." *Id.*

■ *Prappas* also involved claims similar to the instant case—slander of title and tortious interference with contract, both stemming from the filing of a notice of lis pendens. 795 S.W.2d at 795. Citing both *Griffin* and *Kropp,* the court in *Prappas* found that the filing of a lis pendens was absolutely privileged, even if there may have been no statutory basis for the filing. *Id.* at 797–98. "[T]he remedy for miscreance within the judicial process is to seek judicial relief as a part of that process." *Id.* at 797. For example, there is a statutory method for cancelling lis pendens under Tex.Prop.Code § 12.008. *Id.* at 798. "Indeed, impossibility of recovering damages for a wrongful lis pendens filing is precisely why our courts have given a broad reading to § 12.008, so as to grant an effective remedy." *Id.* (citing *Ransopher v. Deer Trails, Ltd.,* 647 S.W.2d 106, 109 (Tex.App.—Houston [1st Dist.] 1983, no writ)). The statutory method for cancelling a lis pendens, however, is not the exclusive remedy for nullifying an unauthorized filing. *Id.* at 796. An aggrieved party requesting relief from an improperly filed lis pendens need not follow the procedures of § 12.008. *Id.* at 798. "When there is no basis to support a lis pendens, the affected party may seek an appropriate order from the district court, with mandamus relief

available in the event the district court refuses to order cancellation." *Id.* at 796. "[A] court may order the cancellation of a lis pendens where it is established that the party filing such notice has not complied with the provisions of [the statute]." *Id.* at 798 (quoting *Hughes v. Houston Northwest Medical Ctr.,* 647 S.W.2d 5, 7 (Tex.App.—Houston [1st Dist.] 1982, writ dism'd)). The court reasoned that since the notice itself failed to comply with the Property Code, there was no reason to limit permissible relief to those statutes. *Id.*

While the Texas Supreme Court has not spoken on this precise issue, this court cannot disregard the decisions of the Texas Court of Appeals unless it is convinced by other persuasive data that the highest court of the state would decide otherwise. *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967); *Rogers v. Corrosion Prods., Inc.,* 42 F.3d 292, 295 (5th Cir.), *cert. denied,* ——— U.S. ———, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Exxon Co. v. Banque De Paris Et Des Pays–Bas,* 889 F.2d 674, 676 (5th Cir. 1989), *cert. denied,* 496 U.S. 943, 110 S.Ct. 3230, 110 L.Ed.2d 676 (1990); *Taylor v. Jim Walter Corp.,* 731 F.2d 266, 267 (5th Cir. 1984). Here, the parties have presented no persuasive data that the Texas Supreme Court would hold otherwise, and, in view of the strength of the appellate court decisions, this court is of the opinion that a contrary result would be unlikely.

Therefore, in the instant case, the Manders' claim against McDermott for slander of title stemming from the filing of notices of lis pendens is misplaced. Instead, the Manders should have pursued other avenues for redress under the state statute or in the Texas courts. Accordingly, at this juncture, summary judgment is warranted on the slander of title claim.

### 2. *Interference with Business.*

▮▮▮ In the instant case, the Manders also assert a claim against McDermott for "interference with business." Texas law provides several causes of action for "interference with business." For example, tortious interference with business relations involves: "1) the existence or prospect of a contract, 2)

an intentional and willful act interfering with the contract that was calculated to cause damage to the plaintiff, and 3) damages." *Kiepfer v. Beller,* 944 F.2d 1213, 1220 (5th Cir.1991). There is also a cause of action for tortious interference with prospective business relations, the requisite elements of which are: "1) a reasonable probability that the plaintiff would have gotten a contract, 2) malicious and intentional action by the defendant which aborted the prospective business relationship, and 3) actual harm to the plaintiff." *In re Burzynski,* 989 F.2d 733, 739 (5th Cir.1993). Finally, a plaintiff claiming tortious interference with a contract must prove: "(1) that a contract subject to interference existed, (2) the defendant's act of interference was willful and intentional, (3) the defendant's intentional act was a proximate cause of the plaintiffs' damage, and (4) actual damage or loss occurred." *Personal Preference Video, Inc. v. Home Box Office, Inc.,* 986 F.2d 110, 111 (5th Cir.1993) (*citing Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 939 (Tex.1991)). The privilege of legal justification is an affirmative defense to a tortious interference claim. *Personal Preference Video, Inc.,* 986 F.2d at 111; *see In re Burzynski,* 989 F.2d at 739.

The court of appeals in *Griffin* extended the rationale of *Kropp,* a slander of title case, to tortious interference actions. *Griffin,* 702 S.W.2d at 695. "[W]e conclude that the holding in *Kropp* does not only apply in a suit for slander of title, but can apply in an action for tortious interference." *Id.* The court recognized that "access to courts without fear of defamation actions outweighs the danger of interference in the affairs of others." *Id.* Thus, the *Griffin* court held that "lis pendens is absolutely privileged in an action for tortious interference with contract." *Id.* Similarly, in *Bayou Terrace Inv. Corp.,* involving a counterclaim for tortious interference with contract, the appellate court noted, "[l]is pendens is a part of the judicial process and the resulting absolute privilege bars a suit for damages arising from the filing of the lis pendens." *Id.* at 818 (citing *Prappas,* 795 S.W.2d at 799; *Griffin,* 702 S.W.2d at 695; *Kropp,* 526 S.W.2d at 287–88).

Here, McDermott does not assert the privilege of legal justification as an affirmative defense. Instead, as noted above, McDermott maintains that there is a blanket privilege associated with lis pendens. The Manders argue, however, that only the good faith litigant is absolutely privileged when he files a notice of lis pendens. *See Griffin,* 702 S.W.2d at 695. In their amended response to McDermott's motion for judgment on the pleadings, the Manders allege that the state court action filed by Sandee and the subsequent lis pendens were designed for no lawful purpose and were meant only to harass and destroy the Manders family. The Manders also claim that "both Sandee Manders and Joseph McDermott have manifested their intent to abuse the use of lis pendens in order to manipulate and malevolently interfere with the business activities of the Manders family." The Manders further assert that an absolute privilege "would allow anyone to tortiously interfere so long as they chose to interfere by merely filing lis pendens. That is why the *Griffin* Court was careful to refer to *good faith litigants.*" In addition, the Manders claim, "There is no protection to people who file frivolous lawsuits and wrongfully utilize lis pendens."

 While the Manders' arguments may have merit from a policy standpoint, the absolute nature of the lis pendens privilege, as recognized by the courts of Texas, undermines their position. As the court in *Prappas* stated, "it is in the nature of an absolute privilege that malice is immaterial." 795 S.W.2d at 799. "Whereas malice dissolves a qualified privilege, the persistence of an absolute privilege does not turn on the presence or absence of good faith." *Id.* In the instant case, as in *Prappas,* any alleged malice on the part of McDermott is immaterial because lis pendens is absolutely privileged. Additionally, as the appellate court in *Bayou Terrace Inv. Corp.* noted, there are "other avenues of relief" if a lis pendens is wrongfully filed. 881 S.W.2d at 818. While not expounding on these avenues, the court in *Bayou Terrace Inv. Corp.* likely was alluding to the *Prappas* court's discussion of other available remedies. *See Prappas,* 795 S.W.2d at 797–98. Moreover, contrary to the Manders' contention, litigants are not without remedy

in Texas for the filing of frivolous lawsuits. Causes of action for malicious prosecution and abuse of process, which have long been recognized as actionable torts in Texas, as well as sanctions under Tex.R.Civ.P. 13, can serve as powerful deterrents to the filing of groundless lawsuits in state court.

Therefore, because the Manders did not avail themselves of the proper avenues for relief in the Texas courts, they may not now look to the federal court for a remedy. Consequently, in the instant lawsuit, McDermott is entitled to summary judgment on the "interference with business" claim.

C. *Additional Privileges and Lack of Privity.*

Because the court has found summary judgment for McDermott to be warranted on the basis that the filing of a lis pendens is absolutely privileged in Texas, the court need not address McDermott's alternative bases for summary judgment.

IV. *Conclusion.*

Under Texas law, the filing of a lis pendens notice is part of the judicial process and is absolutely privileged. Hence, as a matter of law, a lis pendens cannot form the basis for claims alleging slander of title and interference with business. Accordingly, as there are no outstanding issues of material fact, McDermott's Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.